# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In Re:Jericho Cherry                                   Case No.  12-30646-KRH
            Debtor.                                 Chapter 13

---

TOWNE BANK,
            Movant,

v.

JERICHO CHERRY,
            Debtor/Respondent,

CHRISTINE J. CHERRY,
            Co-Debtor/Respondent,
and

SUZANNE E. WADE,
            Chapter 13 Trustee.

---

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND MOTION FOR RELIEF FROM CO-DEBTOR STAY

Towne Bank, the Movant herein, by counsel, respectfully represents to the Court in support of its Motion for Relief as follows:

### JURISDICTION AND PARTIES

1.    That on February 3, 2012, the Debtor filed in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, a Petition for relief under Chapter 13 of the U. S. Bankruptcy Code, and was assigned bankruptcy case No. 12-30646-KRH.

Robert A. Canfield, VSB #16901
Canfield, Baer & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, VA 23230
☎ 804-673-6600
🖷 804-673-6604
*Counsel for Movant*

2.      That this Motion is filed pursuant to 11 U.S.C. Section 362 and Bankruptcy Rules

4001 and 9014, seeking relief from the automatic stay. This is a "core proceeding" pursuant to

28 U.S.C. §157 (b) (2) (G).

RELIEF REQUESTED

3.      At the time of the initiation of these proceedings, the Debtor owned a parcel of

real estate located in the County of Goochland, Virginia, more commonly known as 2771

Broadland Way, Sandy Hook, Virginia 23153 (hereinafter "the Property") and more particularly

known as:

> ALL that certain lot, piece or parcel of land, with improvements thereon and
> appurtenances thereunto belonging, lying and being in the County of Goochland,
> Virginia, shown and designated as Lot 31, High Grove, all as more particularly
> shown on that certain plat made by Michael L. Parrish & Associates, Inc.
> professional Land Surveyors, entitled "High Grove", dated July 30, 1993,
> recorded in the Clerk's Office, Circuit Court, Chesterfield County, Virginia, in
> Plat Book 18, page 22, reference to which plat is hereby made for a more
> particular description.

> BEING the same real estate conveyed to Jericho Cherry and Christine J. Cherry,
> husband and wife, as tenants by the entirety with the right of survivorship as at
> common law, by deed from Steven J. Schumacher and Catherine D. Schumacher,
> dated July 23, 2999, recorded July 29, 19999, in the Clerk's Office, Circuit Court,
> Goochland County, Virginia in Deed Book 415, page 41.

4.      The property is encumbered by a Deed of Trust dated September 29, 2006 and

recorded October 2, 2006 in the Clerk's Office of Goochland County, Virginia, which lists

Debtor and his wife, Christine J. Cherry, as Grantors and Franklin federal Savings Bank as

Lender (please see Exhibit 1).

5.      Franklin Federal Savings Bank has now merged with Towne Bank, which now

holds the Note.

6.      The Deed of Trust of the Movant secures payment of a promissory note in the

original principal amount of $298,000.00.

7.      The amount due to Movant as of the Petition Date was approximately $309,885.79, including other advances made by the noteholder (i.e. taxes, insurance) and attorney's fees and court costs.

8.      The Debtor is in default under the terms of the Deed of Trust, as he currently owes a post-petition arrearage of $36,800.00, not including attorney fees and costs in the amount of $667 in relation to this Motion for Relief, as outlined in attached Exhibit 2.

8.      The Movant has been and continues to be irreparably injured by the stay of Section 362 of the Bankruptcy Code which prevents Movant from enforcing its rights under the Deed of Trust. Cause exists for lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to enable the Movant to enforce its rights under the Deed of Trust.

WHEREFORE, the Movant, its successors, and/or assigns prays that this Court enter an Order lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to enable Movant to proceed with the foreclosure sale of the Property and to allow Movant to take action to obtain possession of the Property and to pursue other rights and remedies as permitted by applicable State law and terms of the Deed of Trust and to grant such other and further relief as necessary.

TOWNE BANK

By:____/s/ Robert A. Canfield_____
Counsel

Robert A. Canfield, VSB #16901
Canfield, Baer & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, VA 23230
☎ 804-673-6600
🖶 804-673-6604
*Counsel for Movant*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In Re: Jericho Cherry                                    Case No.  12-30646-KRH
            Debtor.                                       Chapter 13

2771 Broadland Way
Sandy Hook, VA 23153

SSN / ITIN: xxx-xx-6458

## NOTICE OF HEARING

Towne Bank has filed papers with the Court asking for relief from the Automatic Stay.

**Your rights may be affected.** **You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the relief requested in the Motion, or if you want the Court to consider your views on the Motion, then on or before 14 days after the filing of this motion:

■ File with the Court, at the address shown below, a written request for a hearing [or a written response pursuant to Local Bankruptcy Rule 9013-1(h)]. If you mail your request for hearing (or response) to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

Clerk of the Court
United States Bankruptcy Court
Eastern District of Virginia, Richmond Division
701 E. Broad Street
Richmond, VA 23219

You must also mail a copy to:

Robert A. Canfield, Esquire
2201 Libbie Ave., Suite 200
Richmond, VA  23230

■ Attend the hearing scheduled on March 11, 2015 at 11:00 a.m., in the United States Bankruptcy Court, 701 East Broad Street, Room 5000, Richmond, Virginia.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting the request of the Movant.

Date: February 10, 2015

_____ /s/ Robert A. Canfield _____.
Robert A. Canfield

Robert A. Canfield, VSB #16901
CANFIELD, BAER & HELLER, LLP
2201 Libbie Avenue, #200
Richmond, VA 23230
☎ 804-673-6600
🖷 804-673-6604

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2015, a true copy of the foregoing Motion and Notice was sent either electronically or by U.S. Mail, first-class, postage prepaid, to all necessary parties as follows:

**Robert B. Duke, Jr.**
America Law Group Inc.
dba The Debt Law Group
1928 Arlington Blvd, Ste 112
Charlottesville, VA 22903
*Counsel for Debtors*

**Christine J. Cherry**
2771 Broadland Way
Sandy Hook, VA 23153
*Co-Debtor*

**Suzanne E. Wade**
P.O. Box 1780
Richmond, VA 23218-1780
*Chapter 13 Trustee*

**Jericho Cherry**
2771 Broadland Way
Sandy Hook, VA 23153
*Debtor*

_____ /s/ Robert A. Canfield _____.
Robert A. Canfield

06 0004926

This instrument was drafted by:
**Cawthorn, Picard & Rowe**

TMR/PIN: 21-9-0-31-0

[Name/Entity]

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by **Jericho Cherry and Christine J. Cherry**

, as Borrower (trustor), to

**Franklin Service Corporation**

, as Trustee, for the benefit of

**Franklin Federal Savings and Loan Association of Richmond**
, as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **September 29, 2006**
together with all Riders to this document.

(B)  "Borrower" is **Jericho Cherry, Christine J. Cherry**

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is **Franklin Federal Savings and Loan Association of Richmond**
Lender is a **federal savings and loan**                                              organized and
existing under the laws of **United States of America**                          . Lender's address is
**4501 Cox Road, Glen Allen, Virginia  23060**

. Lender is the beneficiary under this Security Instrument.

(D)  "Trustee" is **Franklin Service Corporation**

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 4501 Cox Road, Glen Allen, Virginia 23060

(E)  "Note" means the promissory note signed by Borrower and dated  **September 29, 2006**
The Note states that Borrower owes Lender **Two Hundred Ninety Eight Thousand and no/100**
Dollars (U.S. **$298,000.00**                                  )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 01, 2037**

VIRGINIA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                                          Form 3047 1/01.
                                                                                                                                              GreatDocs™
ITEM 1960L1 (0011)                                *(Page 1 of 14 pages)*                                        To Order Call: 1-800-968-5775

*(handwritten in left margin:)* Mail to: Franklin Federal P.O. Box 5310 Glen Allen, VA 23058

*(handwritten in left margin:)* File TO: Cawthorn, Picard & Rowe, P.C.

*(handwritten at bottom:)* ①

*(handwritten at bottom right:)* Exhibit 1

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] Const Loan Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3047 1/01

ITEM 1960L2 (0011)    *(Page 2 of 14 pages)*    GreatDocs™
To Order Call: 1-800-968-5775



**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**
[Type of Recording Jurisdiction]

of             **Goochland**             :
[Name of Recording Jurisdiction]
**See Schedule "A" Attached Hereto And Made A Part Hereof**

which currently has the address of             **2771 Broadland Way**
[Street]

**Sandy Hook**             , Virginia             **23153**             ("Property Address"):
[City]                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             Form 3047 1/01
                                                                          GreatDocs™
ITEM 1980L3 (0011)                      *(Page 3 of 14 pages)*             To Order Call: 1-800-968-5775



Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1960L4 (0011)

(Page 4 of 14 pages)

Form 3047 1/01
GreatDocs™
To Order Call: 1-800-968-5775

06 0004926

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1980L5 (0011)

*(Page 5 of 14 pages)*

Form 3047 1/01
GreatDocs™
To Order Call: 1-800-968-5775



06 0004926

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1580L6 (0011)

*(Page 6 of 14 pages)*

Form 3047 1/01
GreatDocs™
To Order Call: 1-800-968-5775



deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1980L7 (0011)

(Page 7 of 14 pages)

Form 3047 1/01
GreatDocs™
To Order Call: 1-800-968-5775



becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced

06 0004926

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3047 1/01
ITEM 1880L8 (0011)                              (Page 8 of 14 pages)                           GreatDocs™
To Order Call: 1-800-968-5775



by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3047 1/01
GreatDocs™
To Order Call: 1-800-968-5775

ITEM 1960L9 (0011)                                    *(Page 9 of 14 pages)*



a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

06 0004926

**19.   Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.   Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.   Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1960L11 (0011)

*(Page 11 of 14 pages)*

Form 3047 1/01
GreatDocs™
To Order Call: 1-800-968-5775



06 0004925

to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge the debts in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3047 1/01
                                                                                      GreatDocs™
ITEM 1990L12 (0011)                          (Page 12 of 14 pages)              To Order Call: 1-800-968-5775



paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 14 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Jericho Cherry                    -Borrower

_____ (Seal)
Christine J. Cherry               -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

Witness:                          Witness:

_____           _____

7117

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3047 1/01
ITEM 1980L13 (0011)                    *(Page 13 of 14 pages)*                GreatDocs™
                                                                  To Order Call: 1-800-968-5775



06 0004926

State of Virginia
City/County of **Chesterfield,**

The foregoing instrument was acknowledged before me this September 29, 2006                  (date) by
**Jericho Cherry and Christine J. Cherry**

(person[s] acknowledging).

Notary Public

My commission expires: 10/31/2009

After Recording Return To:
**Franklin Federal Savings and Loan**
**4501 Cox Road**
**Glen Allen, VA 23060**

06 0004926

VIRGINIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3047 1/01
                                                                                 GreatDocs™
ITEM 1960L14 (0011)                        (Page 14 of 14 pages)                  To Order Call: 1-800-968-5775

14

**CONSTRUCTION LOAN RIDER TO DEED OF TRUST**
**(WITH SECURITY AGREEMENT)**

THIS CONSTRUCTION LOAN RIDER TO DEED OF TRUST AND SECURITY AGREEMENT (the "Rider") is made this 29th day of September, 2006, and is incorporated into and shall be deemed to amend and supplement the Deed of Trust (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to Franklin Federal Savings and Loan Association of Richmond (the "Lender") of the same date and covering the property described in the Security Instrument (the "Property") and located at:

2771 Broadland Way, Sandy Hook, VA  23153

ADDITIONAL COVENANTS

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  This is a CREDIT LINE DEED OF TRUST, within the meaning of Section 55-58.2 of the Code of Virginia (1950), as amended.  For the purposes of and to the extent required by such Section, (i) the name of the noteholder secured by this Security Instrument is Franklin Federal Savings and Loan Association of Richmond, (ii) the address at which communications may be mailed or delivered to such note holder is 4501 Cox Road, Glen Allen, VA  23060, (iii) the maximum aggregate amount of principal to be secured at any one time is **Two Hundred Ninety Eight Thousand and 00/100 DOLLARS ($298,000.00).**

B.  INCORPORATION OF RESIDENTIAL CONSTRUCTION LOAN AGREEMENT

Lender and Borrower entered into a Residential Construction Loan Agreement (the "Loan Agreement") this same date.  The Loan Agreement is incorporated herein by reference.  Default under the terms of the Loan Agreement shall be default under the terms of the Security Instrument which default entitles the Lender to accelerate the maturity of the Note and to exercise all available remedies.  It is understood and agreed that funds to be advanced upon the Note are to be used in construction of certain improvements on the Property in accordance with the Loan Agreement.

C.  FUTURE ADVANCES

The Security Instrument secures future advances made by Lender to Borrower,

15

which future advances shall be at the option of the Lender; however, the maximum principal amount secured by the Security Instrument shall not exceed the amount stated in Definitions (E) of the first page of the Security Instrument. All such future advances shall be made within the time limit authorized by Virginia law for making valid advances. All provisions of this Security Instrument shall apply to any future advances made pursuant to the provisions of this paragraph. Nothing herein contained shall limit the amount secured by the Security Instrument, if such amount is increased by advances made by Lender as elsewhere provided in the Security Instrument and authorized for the protection of the security of Lender.

### D.  WAIVER OF CERTAIN NOTICES DURING CONSTRUCTION

Notwithstanding the 30 day written notice and right to cure provisions contained in Paragraph 22 of the Security Instrument, prior to the Rollover Date (or agreed written extension thereof) as such term is defined in the Note, the Borrower, as well as the sureties, guarantors and endorsers of said Note severally waive all notices, demands, presentments for payment, notices of non-payment, notices of intention to accelerate the maturity, notices of acceleration, notices of dishonor, protest and notice of protest, diligence in collecting or bringing suit as to the Note and as to each, every and all installments thereof and all obligations thereunder and against any party thereto and to the application of any payment on said obligation, or as an offset thereto, and agree to all extensions, renewals, partial payments, substitutions or evidence of indebtedness and the taking, release or substitution of all or any part of the herein described security or the release of any party liable thereon with or without notice before or after maturity.

Prior to the Rollover Date, it is expressly provided that upon default in the punctual payment of the Note or any part or installment thereof, principal or interest, as the same shall become due and payable, or in the performance of any warranty, covenant or agreement, or other default under the terms of the Security Instrument of even date given as security for the payment thereof, or under any other instrument granted to secure payment thereof or executed in connection therewith, Lender may declare the then unpaid principal balance and accrued interest thereon immediately due and payable without notice. Failure to accelerate shall not constitute a waiver on the part of Lender of the right to exercise the same at any other time.

### E.  DEFAULT AND REMEDIES

Covenants contained in Paragraph Nos. 18, 19 and 22 of the Security Instrument are hereby suspended during the continuance of this Rider only, and the following are substituted in lieu thereof:

In the event any of the following events or conditions occur or exist, each

2

16

such event or condition shall be a default hereunder entitling Lender to declare the entire indebtedness hereby secured immediately due and payable:

(1)     Any lien, inferior or superior to the lien of this Security Instrument, is created, permitted or filed against the Property, or any portion thereof, without Lender's prior written consent except current ad valorem taxes which are not then due and payable.

(2)     The sale, assignment or other transfer, voluntarily or involuntarily, of all or a part of Borrower's ownership interest in the Property, or any portion thereof, directly or indirectly, is made without Lender's prior written consent.

(3)     Borrower fails to comply with the terms and conditions of the Note, the Security Instrument or the Loan Agreement.

Upon default, Lender, at its option, may require immediate payment in full of all sums secured by the Security Instrument without demand and may invoke the power of sale and any other remedies permitted by applicable law and the Loan Agreement. However, this option to require immediate payment in full shall not be exercised if such exercise is prohibited by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the Security Instrument including, but not limited to, reasonable attorney's fees and costs.

If Lender invokes the power of sale, Lender shall mail or cause Trustee (as defined in the Security Agreement) to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser a trustee's deed conveying the Property with special warranty of title. The recitals in the trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5% of the gross sales price and reasonable attorney's fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale

06 0004926

3

thereof or to deliver possession of the Property to the purchaser at the sale.

Upon the termination of the provisions of this Rider as set forth below, Covenants contained in Paragraph Nos. 18, 19, and 22 of the Security Instrument shall be reinstated so that they shall then be in full force and effect.

## F.  STATUTORY PROVISIONS

This Security Instrument is made under and pursuant to the provisions of the Code of Virginia, 55-59, 55-59.1 through 55-59.4, 55-60, 26-49, and 55-58.2, as amended, and shall be construed to impose and confer upon the parties hereto and Lender all the rights, duties and obligations prescribed by said Sections, as amended, except as herein otherwise restricted, expanded or changed, including without limitation the following rights, duties and obligations described in short form:

(1)   All exemptions are hereby waived.

(2)   Subject to all on default.

(3)   Renewal, extension, or reinstatement permitted.

(4)   Substitution of trustees collectively or of any of them individually by Lender is permitted for any reason whatsoever, and any number of times without exhaustion of the right to do so.

(5)   Trustee's commission in the event of advertisement but payment before sale, reasonable fees not in excess of two and one-half percent (2.5%) of the outstanding indebtedness.

(6)   Advertisement required, twice a week for two (2) successive weeks in a publication of general circulation within the county or city in which the Property is located.

(7)   Any trustee may act.

(8)   The Trustee may require a deposit in the amount of two percent (2%) of the unpaid principal indebtedness then secured hereby to accompany each bid at foreclosure sale or sale in lieu thereof.

## G.  SECURITY AGREEMENT

Without limiting any of the provisions of the Security Instrument, Borrower, as Debtor (and being referred to in this paragraph as "Debtor," whether one or more), expressly GRANTS unto Lender as Secured Party (and being referred to in this paragraph as "Secured Party," whether one or more), a security interest in the following described property (including both those now and those hereafter existing) (collectively, "Collateral") to the full extent that such properties may be subject to the Uniform Commercial Code as now and hereafter adopted in Virginia (hereinafter called "Uniform Commercial Code"):

4

18

(1)  To the extent owned by Debtor, Debtor's successors and assigns, and acquired with the proceeds of the loan secured by the Security Instrument, all fixtures, goods, furnishings, equipment, building material, machinery, and personal property now or hereafter located in, on, or used or intended to be used in connection with the Property, including without limitation:  doors, partitions, window and floor coverings; apparatus, material, or equipment for supplying, holding or distributing heating, cooling, electricity, gas, water, air, and lighting; security, access, control, and fire prevention and extinguishing apparatus, material, or equipment; household appliances; bathroom and kitchen fixtures; cabinetry; and landscaping (collectively, "Fixtures and Personal Property").  (2)  All proceeds or sums payable in lieu of or as compensation for the loss of or damage to the Property and the Fixtures and Personal Property, and all rights in and to all present and future fire and hazard insurance policies.  (3)  All proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking, in whole or in part, of the Property, or for conveyance in lieu thereof.  (4)  All of Debtor's interest income payable thereunder or otherwise.  (5)  All bonds, deposits, letters of credit, and any other sums at any time credited by or due from Secured Party to Debtor or any guarantor, co-maker, or surety of Debtor, and held by Secured Party.  (6)  Any replacements, additions, or betterments to, or proceeds of, the Collateral described herein above, the sale or distribution of which is not authorized hereby.

In this regard, Debtor and Secured Party further covenant and agree as follows:

1.    In addition to any other remedies granted in the Security Instrument to Secured Party or Trustees, Secured Party may in the event of default, proceed under the Uniform Commercial Code as to all or any part of the Collateral, and shall have and may exercise with respect to the Collateral all the rights, remedies, and powers of a secured party under the Uniform Commercial Code, including without limitation the right and power to sell at public or private sale or sales or otherwise dispose of, lease, or utilize the Collateral, or any part or parts thereof, in any manner authorized or permitted under the Uniform Commercial Code after default by a debtor and to apply the proceeds thereof toward payment of any costs, expenses, reasonable attorneys' fees, and legal expenses thereby incurred by Secured Party and toward payment of indebtedness described in the Secured Instrument in such order or manner as Secured Party may elect.

2.    Among the rights of Secured Party in the event of default and without limitation, Secured Party shall have the right to take possession of the Collateral and to enter upon any premises upon which the Collateral may be

5

19

situated for such purpose without being deemed guilty of trespass and without liability for damages thereby occasioned and to take any action deemed necessary, appropriate, or desirable by Secured Party, at its option and in its sole discretion, to repair, refurbish, or otherwise prepare the Collateral for sale, lease, or other use or disposition as herein authorized.

3.    To the extent permitted by law, Debtor expressly waives any notice of sale or other disposition of the Collateral and any other rights or remedies of a debtor or formalities prescribed by law relative to sale or disposition of the Collateral or exercise of any other right or remedy of Secured Party existing after default hereunder; and to the extent any such notice is required and cannot be waived, Debtor agrees that if such is mailed, postage prepaid, to Debtor at the address shown herein at least ten (10) days before the time of the sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of such notice.

4.    After default, Secured Party is expressly granted the right, at its option, to transfer, at any time to itself or to its nominee, the Collateral or any part thereof and to receive the monies, income, proceeds, or benefits attributable or accruing thereto and to hold the same as security for amounts owing on any of the indebtedness or to apply it to the principal and interest or other amounts owing on any of the indebtedness, whether or not then due, in such manner as Secured Party may elect. All rights to marshalling of assets of Debtor, including any such right with respect to the Collateral, are hereby waived.

5.    All recitals in any instrument of assignment or any other instrument executed by Secured Party or by Trustee incident to sale, transfer, assignment, lease, or other disposition or utilization of the Collateral or any part thereof hereunder shall be requisite to establish full legal propriety of the sale or other action or any fact, condition, or thing incidental thereto, and all prerequisites of such sale or other action and any fact, condition, or thing incident thereto shall be presumed conclusively to have been performed or to have occurred.

6.    Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party that is reasonably convenient to both parties. All expenses of retaking, holding, preparing for sale, lease, or other use or disposition, selling, leasing, or otherwise using or disposing of the Collateral and the like hereunder, including also all reasonable attorney's fees, legal expenses, and costs, shall be added to the indebtedness secured by the Security Instrument and Debtor shall be liable therefor.

6

7.    Certain of the Collateral is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Property, and the Security Instrument upon being filed for record in the real estate records shall operate also as a financing statement upon such of the Collateral that is or may become fixtures.

8.    A copy of this Security Instrument, which is signed by Debtor, may also serve as a financing statement under the Uniform Commercial Code between Debtor and Secured Party, whose addresses are set forth therein.

9.    So long as any amount remains unpaid on any indebtedness secured by the Security Instrument, Debtor shall not execute and there shall not be filed in any public office any financing statement or statements affecting the Collateral other than financing statements in favor of Secured Party hereunder, unless the prior written specific consent and approval of Secured Party shall have first been obtained.

10.    Secured Party is authorized to file, in jurisdictions where this authorization will be given effect, a financing statement signed only by Secured Party covering the Collateral and, at the request of Secured Party, Debtor shall join Secured Party in executing one or more financing statements pursuant to the Uniform Commercial Code in form satisfactory to Secured Party and shall pay the cost of filing the same or filing or recording the Security Instrument as a financing statement in all public offices at anytime and from time to time whenever filing or recording of any financing statement or the Security Instrument is deemed by Secured Party to be necessary or desirable. Any carbon, photographic, or other reproductions of this document may be filed by Secured Party and shall be sufficient as a financing statement.

11.    Debtor further warrants and represents to Secured Party that, except for the security interest granted hereby in the Collateral, Debtor is the owner and holder of the Collateral, free of any adverse claim, security interest, or encumbrance, and Debtor agrees to defend the Collateral against all claims and demands of any person at any time claiming the same or any interest therein, except rights of tenants to use thereof and subject to the other matters set forth herein. Debtor further warrants and represents that Debtor has not heretofore signed any financing statements in connection with the Collateral and that there are no financing statements signed by Debtor now on file in any public office.

## H.  TERMINATION OF CONSTRUCTION LOAN RIDER

7

So long as Borrower is not in default under the terms of the Note, the Loan Agreement, or the Security Instrument, and so long as Borrower has completed the improvements described in the Loan Agreement, this Rider shall terminate on the Rollover Date as defined in the Note, and shall thereafter no longer be in effect.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Construction Loan Rider to Deed of Trust and Security Agreement.

JERICHO CHERRY

CHRISTINE J. CHERRY

Borrower's Mailing Address:
7006 O'Malley Drive
Richmond, VA 23234

06 0004926

8

SCHEDULE "A"

ALL that certain lot, piece or parcel of land, with improvements thereon and appurtenances thereto belonging, lying and being in County of Goochland, Virginia, shown and designated as Lot 31, High Grove, all as more particularly shown on that certain plat made by Michael L. Parrish & Associates, Inc. Professional Land Surveyors, entitled "High Grove", dated July 30, 1993, recorded in the Clerk's Office, Circuit Court, Chesterfield County, Virginia, in Plat Book 18, page 22, reference to which plat is hereby made for a more particular description.

BEING the same real estate conveyed to Jericho Cherry and Christine J. Cherry, husband and wife, as tenants by the entirety with the right of survivorship as at common law, by deed from Steven J. Schumacher and Catherine D. Schumacher, dated July 23, 1999, recorded July 29, 1999, in the Clerk's Office, Circuit Court, Goochland County, Virginia in Deed Book 415, page 41.

06 0004926

INSTRUMENT #060004926
RECORDED IN THE CLERK'S OFFICE OF
GOOCHLAND COUNTY ON
OCTOBER 2, 2006 AT 03:48PM
LEE G. TURNER,, CLERK

RECORDED BY: DWA

23

```
0894 TOWNEBANK                          R E A L   E S T A T E   L O A N                    TODAYS DATE 02/04/15        PAGE    90
                                              FULL TRIAL BALANCE                           AS OF DATE 02/04/15        LAC0513 06.34

ACCT NUMBER  TYPE  CL BN  CONTRACT MATURITY  AGRD THRU INT RATE   LOAN BALANCE    INT PER DIEM    INS DUE      0.00    LOAN FEES         0.00  PAYOFF 1
SHORT NAME   BR          LATE NEXT DUE LST TRAN LAST PYMT STOP IND UNADVANCED              INT REBATE   INS REBATE   0.00    LATE FEES    2,962.68  PAYOFF 2
                   EXIN PYOFF DT INT PAID LST MAINT MIN EARN  ESCROW BAL          INT REBATE      INT PD YTD   0.00    OTHER CHRG       0.00  NEXT PAYMENT
                                OFFICER     PP FNIIY UNAPPLIED  LOAN AMOUNT       NONACCR INT     NEXT INT     0.00    PARTIAL PD       0.00 √PAST DUE AMT

                                                                                                                                       305,721.98  PAYOFF 1
⁴512 0114 C2   12/01/07 04/01/37 02/04/15          6.37500      281,279.62        49.76353                                              305,770.75  PAYOFF 2
CHERRY J  0855   460   11/01/13 02/02/15 02/02/15                     0.00        24,030.38                                              11,500.00  NEXT PAYMENT
                 02/05/15 10/01/13 01/29/15               0.00    2,351.20        0.00          NEXT INT  7,512.06                       √36,800.00 PAST DUE AMT
        SHADOW            ESCRWONDE        NO MAIL        0.00      298,000.00     24,030.88
FRANKLIN FEDERAL PAYOFFS
        COLL DESC  2771 BROADLAND WAY  SANDY HOOK VA
```



Billing Summary

| Bill | Due Date | Paid Date | Payment | Principal | Interest | Escrow | Insurance | Status |
|------|----------|-----------|---------|-----------|----------|--------|-----------|--------|
| 1 | Nov 01 2013 | | $11,500.00 | $1,783.59 | $7,512.06 | $2,204.35 | $0.00 | Multiple Past Due Payments |
| 2 | Apr 01, 2014 | | $2,300.00 | $362.43 | $1,496.70 | $440.87 | $0.00 | Unsatisfied Payment |
| 3 | May 01, 2014 | | $2,300.00 | $364.35 | $1,494.78 | $440.87 | $0.00 | Unsatisfied Payment |
| 4 | Jun 01, 2014 | | $2,300.00 | $366.28 | $1,492.85 | $440.87 | $0.00 | Unsatisfied Payment |
| 5 | Jul 01, 2014 | | $2,300.00 | $368.23 | $1,490.90 | $440.87 | $0.00 | Unsatisfied Payment |
| 6 | Aug 01, 2014 | | $2,300.00 | $370.19 | $1,488.94 | $440.87 | $0.00 | Unsatisfied Payment |
| 7 | Sep 01, 2014 | | $2,300.00 | $372.15 | $1,486.98 | $440.87 | $0.00 | Unsatisfied Payment |
| 8 | Oct 01, 2014 | | $2,300.00 | $374.14 | $1,484.99 | $440.87 | $0.00 | Unsatisfied Payment |
| 9 | Nov 01, 2014 | | $2,300.00 | $376.11 | $1,483.02 | $440.87 | $0.00 | Unsatisfied Payment |
| 10 | Dec 01, 2014 | | $2,300.00 | $378.12 | $1,481.01 | $440.87 | $0.00 | Unsatisfied Payment |
| 11 | Jan 01, 2015 | | $2,300.00 | $380.13 | $1,479.00 | $440.97 | $0.00 | Unsatisfied Payment |
| 12 | Feb 01, 2015 | | $2,300.00 | $413.36 | $1,445.77 | $440.87 | $0.00 | Unsatisfied Payment |

[View Bill] | [Charge Bill] | [Move Bill Up] | [Move Bill Down]

[Close]

Exhibit 2

# TOWNEBANK

## LOAN TRANSACTION HISTORY

JERICHO CHERRY
***HOLD AT BANK***
***FORWARD TO LOUIS ROUSSOS***
HOLD OP
00000

Bank Number      894
Officer          LCCROWDE
Application       Real Estate Loan
Loan Number      512

Loan Amount        $298,000.00
Current Balance    $281,279.62
Interest Rate      6.37500%

Contract Date          12/1/2007
Next Payment Due Date  11/1/2013
Maturity Date          4/1/2037

| Effective Date | Posting Date | Transaction Amount | Transaction Code | Posting Description | Amount |
|---|---|---|---|---|---|
| 11/30/2011 | 11/30/2011 | $1,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 4/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 3/30/2012 | 3/30/2012 | $1,873.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 4/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 4/30/2012 | 4/30/2012 | $2,127.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 5/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 5/31/2012 | 5/31/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.02 |
| | | | | Interest Amount | $1,536.11 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 6/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $287,171.54 |
| 6/29/2012 | 6/29/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.14 |
| | | | | Interest Amount | $1,535.99 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 7/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $287,138.01 |

| Effective Date | Posting Date | Transaction Amount | Transaction Code | Description | Posting Amount |
|---|---|---|---|---|---|
| 7/31/2012 | 7/31/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.27 |
| | | | | Interest Amount | $1,535.86 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 8/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $287,104.30 |
| 8/31/2012 | 8/31/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.39 |
| | | | | Interest Amount | $1,535.74 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 9/1/2011 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $287,070.41 |
| 9/28/2012 | 9/28/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.52 |
| | | | | Interest Amount | $1,535.61 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 10/1/2011 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $287,036.34 |
| 10/30/2012 | 10/30/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.64 |
| | | | | Interest Amount | $1,535.49 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 11/1/2011 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $287,002.09 |
| 11/30/2012 | 11/30/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Principal Amount | $23.77 |
| | | | | Interest Amount | $1,535.36 |
| | | | | Escrow Amount | $440.87 |
| | | | | Payment Due Date | 12/1/2011 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $286,967.66 |
| 12/31/2012 | 12/31/2012 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 1/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 1/31/2013 | 1/31/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 2/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 2/28/2013 | 2/28/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 3/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |

| Effective Date | Posting Date | Transaction Amount | Transaction Code | Posting Description | Amount |
|---|---|---|---|---|---|
| 3/28/2013 | 3/28/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 3/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 4/30/2013 | 4/30/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 4/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 5/31/2013 | 5/31/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 5/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 6/28/2013 | 6/28/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 6/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 7/12/2013 | 7/12/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 7/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 8/14/2013 | 8/14/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 8/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 9/16/2013 | 9/16/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 9/1/2012 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 10/29/2013 | 10/29/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 10/1/2012 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 11/26/2013 | 11/26/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 10/1/2012 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 12/31/2013 | 12/31/2013 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 11/1/2012 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 1/31/2014 | 1/31/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 12/1/2012 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |

| Effective Date | Posting Date | Transaction Amount | Transaction Code | Description | Posting Amount |
|---|---|---|---|---|---|
| 2/28/2014 | 2/28/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 1/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 3/28/2014 | 3/28/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 2/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 4/29/2014 | 4/29/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 3/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 5/30/2014 | 5/30/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 4/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 6/30/2014 | 6/30/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 5/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 7/31/2014 | 7/31/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 5/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 8/29/2014 | 8/29/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 6/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 9/29/2014 | 9/29/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 7/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 10/31/2014 | 10/31/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 8/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 11/28/2014 | 11/28/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 9/1/2013 12:00:00 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |
| 12/31/2014 | 12/31/2014 | $2,000.00 | TC 11 | SCHEDULED PAYMENT - AUTO SPLIT | |
| | | | | Batch Sequence Number | 0 |
| | | | | Payment Due Date | 10/1/2013 |
| | | | | Contains Partial Payment | N |
| | | | | Loan Balance | $0.00 |

Franklin Federal Savings Bank                    Page            1
P O  Box 5310                                    Date        1/05/15
Glen Allen, VA 23058-5310
PH# (804) 967-7000


JERICHO CHERRY
P.O. BOX 5
GUM SPRING VA 23065-0005

---

## GENERAL INFORMATION

| | | | |
|---|---|---|---|
| Account Number | 42 | CIF Number | CAA0096 |
| Home Phone | | Work Phone | (804) 556-0685 |
| Loan Term | 360 M | Loan Type | Fixed-Single Fam<90% |
| Interest Rate | 6.375000% | Origination Date | 12/01/07 |
| Loan Officer | Debra B. Curwen | | |

Collateral Cd        010 Single Family Dwelling
Call Report Cd  A31      First Mortgage - Single Family Residential Pr
Purpose Code         03 Permanant Const

---

## BALANCE & PAYMENT INFORMATION

| | | | |
|---|---|---|---|
| Original Amount | 298,000.00 | Payment Due Date | 11/01/13 |
| Current Balance | 283,516.42 | Payment Amount | 2,300.00 |
| Accrued Interest | 22,556.94 | Principal/Interest | 1,859.13 |
| Daily Per Diem | 48.00 | Payment Type | Interest Included |

---

## LOAN HISTORY
### 2/01/12 to 1/02/15

| Posting Date | Description of Transactions | Transaction Amount | Principal Balance |
|---|---|---|---|
| 2/16/12 | Late Charge Assessed | 77.96 | 289,195.31 |
| 3/16/12 | Late Charge Assessed | 77.96 | 289,195.31 |
| 3/30/12 | Used amortized payment suspe | 438.84 | 289,195.31 |
| 3/30/12 | Escrow No.1 Balance Increase | 440.87 | 289,195.31 |
| 3/30/12 | Interest Payment Split Out | 1,536.35 | 289,195.31 |
| 3/30/12 | Principal Payment Split Out | 22.78 | 289,172.53 |
| 3/30/12 | Late Charge Split Out | 311.84 | 289,172.53 |
| 4/16/12 | Late Charge Assessed | 77.96 | 289,172.53 |
| 4/30/12 | Amortized payment suspense | 49.04 | 289,172.53 |
| 4/30/12 | Escrow No.1 Balance Increase | 440.87 | 289,172.53 |
| 4/30/12 | Interest Payment Split Out | 1,536.23 | 289,172.53 |
| 4/30/12 | Principal Payment Split Out | 22.90 | 289,149.63 |
| 4/30/12 | Late Charge Split Out | 77.96 | 289,149.63 |
| 5/09/12 | Decrease escrow balance 1 | 1,093.66 | 289,149.63 |

Franklin Federal Savings Bank
P O  Box 5310
Glen Allen, VA 23058-5310
PH# (804) 967-7000

| | |
|---|---|
| Page | 2 |
| Date | 1/05/15 |
| Account No. | 2 |

JERICHO CHERRY
P.O. BOX 5
GUM SPRING VA 23065-0005

| Date | Description | Amount | Balance |
|---|---|---|---|
| 5/16/12 | Late Charge Assessed | 77.96 | 289,149.63 |
| 5/31/12 | Escrow No.1 Balance Increase | 440.87 | 289,149.63 |
| 5/31/12 | Interest Payment Split Out | 1,536.11 | 289,149.63 |
| 5/31/12 | Principal Payment Split Out | 23.02 | 289,126.61 |
| 6/18/12 | Late Charge Assessed | 77.96 | 289,126.61 |
| 6/29/12 | Escrow No.1 Balance Increase | 440.87 | 289,126.61 |
| 6/29/12 | Interest Payment Split Out | 1,535.99 | 289,126.61 |
| 6/29/12 | Principal Payment Split Out | 23.14 | 289,103.47 |
| 7/16/12 | Late Charge Assessed | 77.96 | 289,103.47 |
| 7/31/12 | Escrow No.1 Balance Increase | 440.87 | 289,103.47 |
| 7/31/12 | Interest Payment Split Out | 1,535.86 | 289,103.47 |
| 7/31/12 | Principal Payment Split Out | 23.27 | 289,080.20 |
| 8/16/12 | Late Charge Assessed | 77.96 | 289,080.20 |
| 8/30/12 | Decrease escrow balance 1 | 1,063.36 | 289,080.20 |
| 8/31/12 | Escrow No.1 Balance Increase | 440.87 | 289,080.20 |
| 8/31/12 | Interest Payment Split Out | 1,535.74 | 289,080.20 |
| 8/31/12 | Principal Payment Split Out | 23.39 | 289,056.81 |
| 9/17/12 | Late Charge Assessed | 77.96 | 289,056.81 |
| 9/28/12 | Escrow No.1 Balance Increase | 440.87 | 289,056.81 |
| 9/28/12 | Interest Payment Split Out | 1,535.61 | 289,056.81 |
| 9/28/12 | Principal Payment Split Out | 23.52 | 289,033.29 |
| 10/16/12 | Late Charge Assessed | 77.96 | 289,033.29 |
| 10/30/12 | Escrow No.1 Balance Increase | 440.87 | 289,033.29 |
| 10/30/12 | Interest Payment Split Out | 1,535.49 | 289,033.29 |
| 10/30/12 | Principal Payment Split Out | 23.64 | 289,009.65 |
| 11/16/12 | Late Charge Assessed | 77.96 | 289,009.65 |
| 11/19/12 | Decrease escrow balance 1 | 1,093.65 | 289,009.65 |
| 11/30/12 | Escrow No.1 Balance Increase | 440.87 | 289,009.65 |
| 11/30/12 | Interest Payment Split Out | 1,535.36 | 289,009.65 |
| 11/30/12 | Principal Payment Split Out | 23.77 | 288,985.88 |
| 12/17/12 | Late Charge Assessed | 92.96 | 288,985.88 |
| 12/31/12 | Used amortized payment suspe | 300.00 | 288,985.88 |
| 12/31/12 | Escrow No.1 Balance Increase | 440.87 | 288,985.88 |
| 12/31/12 | Interest Payment Split Out | 1,535.24 | 288,985.88 |
| 12/31/12 | Principal Payment Split Out | 323.09 | 288,661.99 |
| 1/16/13 | Late Charge Assessed | 92.96 | 288,661.99 |
| 1/31/13 | Used amortized payment suspe | 300.00 | 288,661.99 |
| 1/31/13 | Escrow No.1 Balance Increase | 440.87 | 288,661.99 |
| 1/31/13 | Interest Payment Split Out | 1,533.52 | 288,661.99 |
| 1/31/13 | Principal Payment Split Out | 325.61 | 288,336.38 |
| 2/19/13 | Late Charge Assessed | 92.96 | 288,336.38 |
| 2/28/13 | Amortized payment suspense | 2,000.00 | 288,336.38 |
| 3/18/13 | Late Charge Assessed | 92.96 | 288,336.38 |
| 3/28/13 | Used amortized payment suspe | 300.00 | 288,336.38 |
| 3/28/13 | Escrow No.1 Balance Increase | 440.87 | 288,336.38 |
| 3/28/13 | Interest Payment Split Out | 1,531.79 | 288,336.38 |
| 3/28/13 | Principal Payment Split Out | 327.34 | 288,009.04 |

Franklin Federal Savings Bank
P O Box 5310
Glen Allen, VA 23058-5310
PH# (804) 967-7000

Page 3
Date 1/05/15
Account No. 12

JERICHO CHERRY
P.O. BOX 5
GUM SPRING VA 23065-0005

| | | | |
|---|---|---|---|
| 4/16/13 | Late Charge Assessed | 92.96 | 288,009.04 |
| 4/30/13 | Used amortized payment suspe | 300.00 | 288,009.04 |
| 4/30/13 | Escrow No.1 Balance Increase | 440.87 | 288,009.04 |
| 4/30/13 | Interest Payment Split Out | 1,530.05 | 288,009.04 |
| 4/30/13 | Principal Payment Split Out | 329.08 | 287,679.96 |
| 5/16/13 | Late Charge Assessed | 92.96 | 287,679.96 |
| 5/29/13 | Decrease escrow balance 1 | 1,029.53 | 287,679.96 |
| 5/31/13 | Used amortized payment suspe | 300.00 | 287,679.96 |
| 5/31/13 | Escrow No.1 Balance Increase | 440.87 | 287,679.96 |
| 5/31/13 | Interest Payment Split Out | 1,528.30 | 287,679.96 |
| 5/31/13 | Principal Payment Split Out | 330.83 | 287,349.13 |
| 6/17/13 | Late Charge Assessed | 92.96 | 287,349.13 |
| 6/28/13 | Used amortized payment suspe | 300.00 | 287,349.13 |
| 6/28/13 | Escrow No.1 Balance Increase | 440.87 | 287,349.13 |
| 6/28/13 | Interest Payment Split Out | 1,526.54 | 287,349.13 |
| 6/28/13 | Principal Payment Split Out | 332.59 | 287,016.54 |
| 7/11/13 | PRINCIPAL ADVANCE | 1,900.00 | 288,916.54 |
| 7/12/13 | Used amortized payment suspe | 300.00 | 288,916.54 |
| 7/12/13 | Escrow No.1 Balance Increase | 440.87 | 288,916.54 |
| 7/12/13 | Interest Payment Split Out | 1,534.87 | 288,916.54 |
| 7/12/13 | Principal Payment Split Out | 324.26 | 288,592.28 |
| 7/16/13 | Late Charge Assessed | 92.96 | 288,592.28 |
| 8/14/13 | Used amortized payment suspe | 300.00 | 288,592.28 |
| 8/14/13 | Escrow No.1 Balance Increase | 440.87 | 288,592.28 |
| 8/14/13 | Interest Payment Split Out | 1,533.15 | 288,592.28 |
| 8/14/13 | Principal Payment Split Out | 325.98 | 288,266.30 |
| 8/16/13 | Late Charge Assessed | 92.96 | 288,266.30 |
| 8/22/13 | Decrease escrow balance 1 | 1,261.40 | 288,266.30 |
| 9/16/13 | Used amortized payment suspe | 300.00 | 288,266.30 |
| 9/16/13 | Escrow No.1 Balance Increase | 440.87 | 288,266.30 |
| 9/16/13 | Interest Payment Split Out | 1,531.41 | 288,266.30 |
| 9/16/13 | Principal Payment Split Out | 327.72 | 287,938.58 |
| 9/16/13 | Late Charge Assessed | 92.96 | 287,938.58 |
| 10/16/13 | Late Charge Assessed | 92.96 | 287,938.58 |
| 10/29/13 | Amortized payment suspense | 2,000.00 | 287,938.58 |
| 11/14/13 | Decrease escrow balance 1 | 1,029.52 | 287,938.58 |
| 11/18/13 | Late Charge Assessed | 92.96 | 287,938.58 |
| 11/26/13 | Used amortized payment suspe | 300.00 | 287,938.58 |
| 11/26/13 | Escrow No.1 Balance Increase | 440.87 | 287,938.58 |
| 11/26/13 | Interest Payment Split Out | 1,529.67 | 287,938.58 |
| 11/26/13 | Principal Payment Split Out | 329.46 | 287,609.12 |
| 12/16/13 | Late Charge Assessed | 92.96 | 287,609.12 |
| 12/31/13 | Used amortized payment suspe | 300.00 | 287,609.12 |
| 12/31/13 | Escrow No.1 Balance Increase | 440.87 | 287,609.12 |
| 12/31/13 | Interest Payment Split Out | 1,527.92 | 287,609.12 |
| 12/31/13 | Principal Payment Split Out | 331.21 | 287,277.91 |
| 1/16/14 | Late Charge Assessed | 92.96 | 287,277.91 |

Franklin Federal Savings Bank
P O  Box 5310
Glen Allen, VA 23058-5310
PHH (804) 967-7000

| Page | 4 |
|---|---|
| Date | 1/05/15 |
| Account No. | 2 |

JERICHO CHERRY
P.O. BOX 5
GUM SPRING VA 23065-0005

| Date | Description | Amount | Balance |
|---|---|---|---|
| 1/31/14 | Used amortized payment suspe | 300.00 | 287,277.91 |
| 1/31/14 | Escrow No.1 Balance Increase | 440.87 | 287,277.91 |
| 1/31/14 | Interest Payment Split Out | 1,526.16 | 287,277.91 |
| 1/31/14 | Principal Payment Split Out | 332.97 | 286,944.94 |
| 2/18/14 | Late Charge Assessed | 92.96 | 286,944.94 |
| 2/28/14 | Used amortized payment suspe | 300.00 | 286,944.94 |
| 2/28/14 | Escrow No.1 Balance Increase | 440.87 | 286,944.94 |
| 2/28/14 | Interest Payment Split Out | 1,524.39 | 286,944.94 |
| 2/28/14 | Principal Payment Split Out | 334.74 | 286,610.20 |
| 3/17/14 | Late Charge Assessed | 92.96 | 286,610.20 |
| 3/28/14 | Used amortized payment suspe | 300.00 | 286,610.20 |
| 3/28/14 | Escrow No.1 Balance Increase | 440.87 | 286,610.20 |
| 3/28/14 | Interest Payment Split Out | 1,522.62 | 286,610.20 |
| 3/28/14 | Principal Payment Split Out | 336.51 | 286,273.69 |
| 4/16/14 | Late Charge Assessed | 92.96 | 286,273.69 |
| 4/29/14 | Used amortized payment suspe | 300.00 | 286,273.69 |
| 4/29/14 | Escrow No.1 Balance Increase | 440.87 | 286,273.69 |
| 4/29/14 | Interest Payment Split Out | 1,520.83 | 286,273.69 |
| 4/29/14 | Principal Payment Split Out | 338.30 | 285,935.39 |
| 5/01/14 | Decrease escrow balance 1 | 633.50 | 285,935.39 |
| 5/16/14 | Late Charge Assessed | 92.96 | 285,935.39 |
| 5/30/14 | Used amortized payment suspe | 300.00 | 285,935.39 |
| 5/30/14 | Escrow No.1 Balance Increase | 440.87 | 285,935.39 |
| 5/30/14 | Interest Payment Split Out | 1,519.03 | 285,935.39 |
| 5/30/14 | Principal Payment Split Out | 340.10 | 285,595.29 |
| 6/16/14 | Late Charge Assessed | 92.96 | 285,595.29 |
| 6/30/14 | Amortized payment suspense | 2,000.00 | 285,595.29 |
| 7/16/14 | Late Charge Assessed | 92.96 | 285,595.29 |
| 7/31/14 | Used amortized payment suspe | 300.00 | 285,595.29 |
| 7/31/14 | Escrow No.1 Balance Increase | 440.87 | 285,595.29 |
| 7/31/14 | Interest Payment Split Out | 1,517.22 | 285,595.29 |
| 7/31/14 | Principal Payment Split Out | 341.91 | 285,253.38 |
| 8/18/14 | Late Charge Assessed | 92.96 | 285,253.38 |
| 8/21/14 | Decrease escrow balance 1 | 1,186.47 | 285,253.38 |
| 8/29/14 | Used amortized payment suspe | 300.00 | 285,253.38 |
| 8/29/14 | Escrow No.1 Balance Increase | 440.87 | 285,253.38 |
| 8/29/14 | Interest Payment Split Out | 1,515.41 | 285,253.38 |
| 8/29/14 | Principal Payment Split Out | 343.72 | 284,909.66 |
| 9/16/14 | Late Charge Assessed | 92.96 | 284,909.66 |
| 9/29/14 | Used amortized payment suspe | 300.00 | 284,909.66 |
| 9/29/14 | Escrow No.1 Balance Increase | 440.87 | 284,909.66 |
| 9/29/14 | Interest Payment Split Out | 1,513.58 | 284,909.66 |
| 9/29/14 | Principal Payment Split Out | 345.55 | 284,564.11 |
| 10/16/14 | Late Charge Assessed | 92.96 | 284,564.11 |
| 10/31/14 | Used amortized payment suspe | 300.00 | 284,564.11 |
| 10/31/14 | Escrow No.1 Balance Increase | 440.87 | 284,564.11 |
| 10/31/14 | Interest Payment Split Out | 1,511.75 | 284,564.11 |

Franklin Federal Savings Bank          Page                    5
P O  Box 5310                          Date               1/05/15
Glen Allen, VA 23058-5310              Account No.             2
PH# (804) 967-7000


        JERICHO CHERRY
        P.O. BOX 5
        GUM SPRING VA 23065-0005


| 10/31/14 | Principal Payment Split Out    |   347.38 | 284,216.73 |
| 11/03/14 | Decrease escrow balance 1      |   633.50 | 284,216.73 |
| 11/17/14 | Late Charge Assessed           |    92.96 | 284,216.73 |
| 11/28/14 | Used amortized payment suspe   |   300.00 | 284,216.73 |
| 11/28/14 | Escrow No.1 Balance Increase   |   440.87 | 284,216.73 |
| 11/28/14 | Interest Payment Split Out     | 1,509.90 | 284,216.73 |
| 11/28/14 | Principal Payment Split Out    |   349.23 | 283,867.50 |
| 12/16/14 | Late Charge Assessed           |    92.96 | 283,867.50 |
| 12/31/14 | Used amortized payment suspe   |   300.00 | 283,867.50 |
| 12/31/14 | Escrow No.1 Balance Increase   |   440.87 | 283,867.50 |
| 12/31/14 | Interest Payment Split Out     | 1,508.05 | 283,867.50 |
| 12/31/14 | Principal Payment Split Out    |   351.08 | 283,516.42 |


Thank you for banking with us.